UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE P. BATES,

        Plaintiff,

v.                                                            Case No. 09-12840
                                                            Honorable Julian Abele Cook, Jr.

HARTFORD INSURANCE COMPANY OF THE
MIDWEST,

        Defendant.

## ORDER

In this case, the Plaintiff, Eddie Bates, alleges that the Defendant, the Hartford Insurance Company of the Midwest, breached the parties' insurance contract when it wrongfully denied his requests for payment under his fire insurance policy. Currently before the Court are Hartford's motion for summary judgment and Bates's counter-motion for summary judgment as to liability.

I.

Bates owns a residential rental property at 16148 Prairie in Detroit, Michigan, that was damaged by a fire on June 17, 2008. Bates asserts that he did not learn about the fire loss until his return to the United States from a vacation on June 23, 2008. He reported the fire loss to Hartford on the following day (June 24th). Upon its receipt of this claim, Hartford sought a copy of the police report from the Detroit Police Department. However, rather than sending a report relating to the June 17th fire, the Police Department forwarded a report, dated May 28, 2008, which recorded, among other things, a burglary on May 23rd at the Bates house. This report incorporated a statement from Bates that the front and back windows at this home had been broken and "the living room carpet was burned." Hartford contends that this report is evidence that there had been an undisclosed fire in his

1

home prior to the incident in June for which Bates had submitted his insurance claim. However, Bates maintains that there was no fire at this home prior to the June 2008 fire, and that the carpet sustained only minor cigarette burns.

In addition, there is a dispute between the parties as to whether the Bates house was vacant in the days which immediately preceded the fire. There is evidence that Shanese Johnson signed a one-year lease agreement with Bates for her use of the house as a tenant beginning on March 1, 2008. However, Johnson, while acknowledging that she had brought some her clothing and kitchen utensils into the rental property on Prairie, denies having spent a single night in the house and insists that all of her personal belongings had been removed prior to April 1st. This version is contested by Bates, who submits that Johnson did not vacate the premises until the early days of May. In fact, he points to a landlord-tenant proceeding on April 29, 2008, in the 36th District Court of Michigan which required Johnson to vacate the premises and surrender the keys by May 9, 2008. However, Bates contends that she neither surrendered the house keys nor removed her possessions until some time after May 19, 2008.

Following the completion of its investigation, Hartford denied Bates's request for payment under the parties' insurance contract. Feeling aggrieved by this rejection, Bates filed a law suit on June 17, 2009, in the Wayne County Circuit Court of Michigan, which was subsequently removed to this Court on the basis of its diversity jurisdiction, §28 U.S.C. § 1332; 1441. On November 1, 2010, Hartford filed a motion for the entry of a summary judgment, contending that (1) the house on Prairie had been vacant for more than thirty consecutive days prior to the onset of the fire which, in turn, barred any payment due to the *vacancy exclusion* within the *vandalism and malicious mischief* provision of the insurance contract; and (2) Bates had concealed or misrepresented a material fact relating to his claim for damages - an allegation which, if established, would bar any

2

payment according to the *concealment or fraud* provision within the parties' insurance contract.

Bates, in opposing Hartford's motion, has filed a counter-motion for summary judgment with respect to the issue of liability. It is his position that (1) the *vacancy exclusion* does not apply to arson fire losses, (2) the thirty-day vacancy clause is void as a matter of law in the State of Michigan, (3) the house on Prairie was not vacant - within the meaning of the policy - for thirty consecutive days prior to the fire, and (4) Hartford's misrepresentation defense is legally flawed because there is no evidentiary support for its allegation that there had been an earlier fire at this home. Throughout their written pleadings and oral arguments, the parties have traded accusations in which they charged each other with erroneous characterizations of the facts and/or purposeful misinterpretations of the insurance contract. These exchanges continued without either party yielding the legal ground to the other.

II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Therefore, the entry of a summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing

3

a request for a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

III.

Because the jurisdiction of the Court in this case is founded on diversity of citizenship grounds, Michigan substantive law - including its principles of statutory construction and contract interpretation - governs. Thus, a court must interpret the insurance policy so as to "best effectuate the intent of the parties and the clear, unambiguous language of the policy." *Auto Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997) (citation and internal quotation marks omitted).

Under the present circumstances, a court is obliged to examine the contract as a whole and give meaning to all of its terms. *Id.* Unambiguous words and terms are construed according to their plain and ordinary meanings, *St. Paul Fire & Marine Ins. Co. v. Ingall*, 577 N.W.2d 188, 192 (Mich. App. 1998), and are "given a meaning in accordance with their common usage," *Cavalier Mfg. Co. v. Employers Ins. of Wausau*, 564 N.W.2d 68, 70-71 (Mich. App. 1997). "While ambiguities in a policy are generally construed in favor of the insured, the [c]ourt will not create ambiguities where none exist." *Id.* at 71. "If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances[,] the contract is ambiguous and should be construed against its drafter and in favor of coverage." *Raska v. Farm Bureau Mut. Ins. Co.*, 314 N.W.2d 440, 441 (Mich. 1982), *overruled on other grounds by Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999); *see also Vushaj v. Farm Bureau Gen. Ins. Co.*, 773 N.W.2d 758, 759 (Mich. App. 2009). Although the insured bears the burden of proving coverage, the insurer bears the responsibility of proving that an exclusion applies. *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 n.6 (Mich. 1995).

Similarly, under Michigan's statutory construction principles, courts are to construe statutes so as to effectuate a legislative intent. *Moore v. Secura Ins.*, 759 N.W.2d 833, 838 (Mich. 2008). Thus, courts are obliged to "review the language of the statute itself and give the words used by the Legislature their common and ordinary meaning." *Id.* If the language is unambiguous, the analysis by the court is at an end, and "further construction is neither required nor permitted." *Nastal v. Henderson & Assocs. Investigations, Inc.*, 691 N.W.2d 1, 5 (Mich. 2005).

IV.

Bates submits that Hartford's *vacancy* defense fails for a variety of reasons, which, in his

5

opinion, are independently sufficient to defeat this pending motion for summary judgment. First, he contends that the *vacancy* provision - as asserted by Hartford - does not apply to his claim. Second, he submits that, even if the *vacancy* provision is deemed to be applicable to his claim, its content is absolutely void as a matter of law in Michigan. Finally, he argues that, even if the vacancy provision is not void, his house was not vacant within the meaning of the parties' contract. Hartford disagrees.

Bates's insurance policy covers damages that are caused by vandalism, but not if the subject property had been vacant for more than thirty days prior to the claimed loss. The policy states, in relevant part, that "[the *vandalism and malicious* loss] peril does not include loss . . . to property on the described location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss." (Def.'s Br., Ex. 9). Bates argues that this provision is inapplicable to his claim because (1) fire and vandalism are distinct causes of losses that are governed by different policy provisions, and (2) the vacancy exclusion applies only to vandalism losses. (Pl.'s Br. at 1, 8 n.1; Pl.'s Reply at 5). Hartford takes issue with Bates's argument, contending that it is "undisputed" that the fire in June 2008 was caused by vandalism or malicious mischief. In support of this position, Hartford points to Bates's sworn statement in his proffered proof of loss claim which indicates that a "fire and vandalism loss occurred." (Def.'s Br. at 5 and Ex. 4). However, a complete examination of this proof of loss form reveals that Bates had filed his claim pursuant to the policy provision which insured against a loss by "fire and lightning" - not "vandalism and malicious mischief" - and that the cause and origin of the loss was "a fire (possible arson)." Therefore, Hartford's characterization of the cause of loss as "undisputed" is mistaken at best.

6

Although the Court has not uncovered any controlling authority on point,[1] it does find the thorough analysis and decision by the Michigan Court of Appeals in *Johnson v. State Farm Fire & Casualty Co.*, No. 278267, 2008 WL 4724322, at *2-4 (Mich. App. Oct 28, 2008), to be persuasive. In *Johnson*, the insurer relied on its *vacancy-vandalism* provision to deny coverage for losses that had been caused by an arson fire. Noting that the policy listed *fire* and *vandalism and malicious mischief* as separate perils, whereas the *vacancy* exclusion only mentioned *vandalism and malicious mischief*, the appellate tribunal determined that "arson is a specific kind of fire - as contrasted to a form of vandalism - [and therefore ] we conclude that arson coverage is not precluded by the *vandalism* exclusion." *Id.* at *4. As in *Johnson*, the policy at issue here lists *fire or lightning* and *vandalism and malicious mischief* as separate insured perils.

The structure of the policy at issue here provides an even more compelling reason to conclude that arson is not within the *vandalism* class of a loss. Although *fire and lighting* coverage is included in the basic policy, coverage for *vandalism and malicious mischief* was purchased separately by the insured with the payment of an additional premium. The basic policy excludes coverage for intentional losses except that, in the case of fire losses, the exclusion does not apply to an insured who did not commit or direct the commission of any act which resulted in the loss of property interests by fire. (Def.'s Br., Ex. 9, at Michigan Special Provisions, General Exclusion 8).

---

[1] At the oral argument, Hartford appeared to advance the position that *Vushaj*, 284 Mich. App. 513, is binding precedent that holds that an arson fire falls within the vandalism class of losses. However, a reading by the Court of *Vushaj* does not support Hartford's interpretation. It is true that *Vushaj* held that the insured was properly denied coverage for arson losses under his policy's thirty-day vacancy provision. However and contrary to Hartford's argument, *Vushaj* did not hold that arson was vandalism. Unlike the policy at issue here, the policy in *Vushaj* provided that coverage was not available for *any* loss where the subject premises was vacant or unoccupied. Because the vacancy provision was not limited to vandalism losses, the court had no occasion to consider whether arson was a fire or vandalism loss.

Thus, *arson* is contemplated as a peril within the class of losses caused by fire - not by *vandalism*. Furthermore, there is no vacancy provision anywhere in the policy except with respect to the *vandalism and malicious mischief* additional coverage. Thus, in the absence of a vandalism buy-up, there would be no vacancy provision in the policy. Construing the policy as suggested by Hartford would require the Court to adopt a nonsensical conclusion; namely, that the policy provides coverage against arson fires in vacant properties unless an insured pays an extra premium to insure against the additional perils of vandalism and malicious mischief. Although Hartford could have included a *vacancy* provision with respect to fire losses in the policy,[2] it did not do so. Hartford is not permitted to transform an exclusion from its *vandalism* coverage into an exclusion from its *fire*

---

[2]In light of the conclusion by the Court that the *vacancy* provision is not implicated here, it need not address Bates's argument that, if the *vacancy* provision is construed to apply to *fire* losses, it would be void as being contrary to the insurance law in Michigan. However, the Court notes that under the provisions of the former Michigan Compiled Law § 500.2832, as reenacted and incorporated by § 500.2833(2), a fire insurance contract which includes a *vacancy* exclusion must provide for at least sixty days of vacancy in order for the exclusion to become applicable and legally enforceable. Moreover, where a provision is determined to be "absolutely void" because it conflicts with the provisions of the fire insurance code, Mich. Comp. Law § 500.2860, a court should read the corresponding insurance code provision into the policy only if the provision is mandatory. *Randolph v. State Farm Fire & Cas. Co.*, 580 N.W.2d 903, 904 (Mich. App. 1998) ("Insurance contracts are subject to statutory regulations, and mandatory, statutory provisions from the Insurance Code must be read into the contracts when applicable."). Mich. Comp. Law § 500.2833(2) mandates that, "[e]xcept as otherwise provided in this act, each fire insurance policy issued or delivered in this state pursuant to subsection (1) shall contain, at a minimum, the coverage provided in the standard fire policy under former section 2832." Thus, Mich. Comp. Law § 2833(2) incorporates and sets as baselines those provisions of coverage that were delineated in former Mich. Comp. Law § 2832. *See Williams v. Auto Club Grp. Ins. Co.*, 569 N.W.2d 403, 405 (Mich. App. 1997) ("[T]he insertion of subsection 2833(2) served to reenact the coverage guarantees of § 2832."). Mich. Comp. Law § 2833(2) provides no basis for concluding that those provisions which *restrict* coverage - those provisions regarding exclusions and conditions - are also mandatory and thus must be read into the policy by a reviewing court. *See Martin v. Farm Bureau Gen. Ins. Co.*, No. 275261, 2008 WL 1807940, at *4 (Mich. App. Apr. 22, 2008) (emphasis added) ("[Section] 500.2833(2) only requires fire insurance policies to provide the same *coverage* as the standard fire insurance policy contained in former [Section] 500.2832. It does not require insurers to write the policy *conditions* contained in the standard fire insurance policy into their fire insurance policies.").

coverage.

The Court thus concludes that the policy, when considered as a whole, is not ambiguous: Arson is not included within the vandalism and malicious mischief class of perils, and therefore the vacancy-vandalism exclusion does not apply to Bates's claim. Moreover, even if Hartford's interpretation of the contract constituted a "fair reading [that] leads one to understand there is no coverage," *Raska*, 314 N.W.2d at 441, the Michigan principles of contract interpretation would require the Court to construe the ambiguity against the drafter and in favor of coverage. In light of the conclusion by the Court that an arson fire is covered by the fire and lightning loss provision and is not included within the vandalism and malicious mischief provision, Hartford cannot defend its denial of Bates's fire loss claim on the basis of the *vacancy-vandalism* exclusion. Thus, the factual dispute as to whether, and if so, for how long, the house was vacant is immaterial - or, as Bates denominates it, "an irrelevant factual controversy." (Pl.'s Br. at 4). Therefore, Bates is entitled to the entry of a partial summary judgment with respect to Hartford's *vacancy* defense.

V.

Hartford also contends that its denial of Bates's claim was appropriate on the basis of the *concealment or fraud* condition of coverage. This provision provides as follows:

> 8. With respect to loss caused by fire, we provide no coverage for loss to a person insured under this policy, who has:
>     (1) Intentionally concealed or misrepresented any material fact or circumstance;
>     (2) Engaged in fraudulent conduct; or
>     (3) Made false statements;
> relating to this insurance.

(Def.'s Br., Ex. 9, at Michigan Special Provisions, Condition 3).[3]

---

[3] Hartford cites the *concealment* condition in the basic policy. However, it appears that - to the extent they are applicable - the Michigan Special Provisions replace the basic provisions.

9

Hartford states that it is "undisputed" that Bates made material misrepresentations with respect to the break-in of his insured property during the month before the fire at issue. Hartford points to the following answers that Bates gave during an examination under oath:

> Q: What damage was done to the house [in the May 2008 break-in]?
> A: There was not any damage done, just to [the back] window. They came through, looked like it was teenagers or something. They were in there smoking. I found cigarette butts, cigar butts, bottles, the chairs was around in the living room like they were in there sitting.
> . . . .
> Q: They didn't start a fire?
> A: No.

(Def.'s Br. at 9-10).

Hartford contrasts this exchange with Bates's statements within the May 28, 2008 report that it received from the Detroit Police Department. The investigating officer wrote that the victim (i.e., Bates) had stated that "he left his rental property intact and when he returned he discovered his front picture frame sliding window broken and his back window broken also. Victim states that his living room carpet was burned." (Def.'s Br., Ex 5). Hartford characterizes this report as good and sufficient evidence that "Mr. Bates had called the police and complained that the sliding frame of the rear window in the home had been broken into and that vandals had set fire to the carpet in the living room. Mr. Bates did not report this fire to The Hartford." (Def.'s Br. at 3). According to Hartford, this report is proof that Bates made a material misrepresentation regarding his insurance coverage when he denied under oath that the home had been damaged by vandals prior to the June fire.

Hartford also appears to suggest that, even if there was no prior fire, Bates's failure to report

---

(*See* Def.'s Br., Ex. 9, at Michigan Special Provisions, Condition 3 ("3. Concealment or fraud is deleted and replaced by the following . . . .")). The policy provision cited by Hartford states: "We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." (Def.'s Br. at 4 and Ex. 9).

certain damage (to wit, the carpet had sustained cigar and/or cigarette burns and that the front and the back windows had been broken) constitutes a material misrepresentation which justifies its denial of his claim. Hartford contends that any prior fire or burn damage would be highly relevant to its investigation of Bates's claim because (1) a prior fire could be clear evidence of an earlier unsuccessful attempt to burn the home; and (2) it could be proof of another effort by him to use this claim to recover for unreported damages in the May incident.

Bates disputes the factual bases as well as the legal underpinnings of Hartford's argument. First, he contests the admissibility of the police report under Federal Rule of Evidence 803(8), contending that police reports are only admissible under the public agency records rule to the extent that they "contain factual findings which are based upon the knowledge or observation of the person preparing the reports." *Kubik v. Brown*, 979 F. Supp. 539, 544 (W.D. Mich. 1997). Inasmuch as the police report is only a recorded statement that was given to a police officer, Bates submits that the report is hearsay within hearsay rather than a set of facts based on the officer's knowledge or observation. However, the Sixth Circuit has held that "the personal knowledge requirement does not extend to official reports admissible under Rule 803(8)," *Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009), because these documents are almost inevitably based upon interviews that are conducted pursuant to an investigation rather than the writer's first-hand knowledge, *see Weinstein v. Siemens*, No. 07-15000, 2010 WL 4824952, at *3 (E.D. Mich. Nov. 22, 2010). Moreover, the statements within this report are, by definition, not hearsay because they are admissions by a party-opponent under Federal Rule of Evidence 801(d)(2)(A). *Cf.*, *Weinstein*, 2010 WL 4824952, at *5 (third-party statements in police report were not hearsay because declarants were authorized by their employer - the party against whom the report was offered - to speak or were acting within scope of their employment when statements were given, Fed. R. Evid. 801(d)(2)(C), (D)). Under these

circumstances, the police report is admissible evidence that the Court may consider when evaluating the pending dispositive motions. Hence, the Court rejects Bates's articulated position on this issue.

Bates next submits that the statement in the police report (to wit, that the carpet was "burned") does not support the inference that it had been set on fire. To the contrary, he asserts that the investigating police officer was told by him that cigar and cigarette burns were found on the living room carpet - not that it had been set on fire, as contended by Hartford. (Def.'s Br. at 3 and Ex. A, Bates Aff.). Moreover, Bates contends that (1) only minimal damage was caused as a result of these carpet burns, (2) the damage to the window was subsequently corrected by him, and (3) these problems were so minor that neither replacement nor repair services were necessary. (Def.'s Brief, Ex. A). Thus, he - in denying having made any material misrepresentations under oath during the examination - insists that his statements to the police department officers and to Hartford personnel were truthful and fully consistent with each other.

Hartford disputes Bates's characterization and assessments of these two versions of his statements. (Def.'s Reply Br. at 6). In support of this position, Hartford has submitted photographs of the Bates home taken after the fire which show extensive and "separate and discrete fire damage to the carpeting." (*Id.* at 7). Hartford argues that this damage is inconsistent with Bates's description of the fire damage in his examination under oath. Specifically, Hartford points to the following exchange:

> Q: Okay. Did you go into the house to look at the burn damage caused by the fire?
> A: On the 23rd of June.
> Q: And where was the burn damage located at?
> A: It was throughout the house, upstairs mostly.
> Q: Up on the second floor?
> A: Yes.
> Q: Was the burn damage on the first floor?
> A: The stairs and bathroom but mostly it was smoke damage.
> Q: So you're saying the burn damage was mostly confined to the –

>    Q: Upper structure.
>    Q: -- upper structure with some burn damage on the first floor on the stairs?
>    A: Yes.

(Def.'s Reply Br. at 9; Def.'s Br., Ex. 1 at 52:6-22). Thus, Hartford reasons that, if the damage from the June fire was mostly confined to the upper structure and stairs and the photographs show extensive damage to the first floor carpet, then the damage from the May incident must have been far more significant than Bates had indicated.

However, it should be noted that Hartford did not include the next four lines of Bates's examination testimony:

>    Q: Was the carpeting burned on the first floor?
>    A: Yes.
>    Q: So you had carpet damage too?
>    A: Yes.

(Def.'s Br., Ex. 1 at 52:23-53:1). Bates's testimony (to wit, the carpet was burned in the June fire) significantly undercuts a necessary premise of Hartford's inference about the extent of the damage from the May incident. The Court concludes that each side has adduced sufficient, competing evidence to demonstrate that a genuine issue of material fact exists with respect to whether Bates committed misrepresentation in his dealings with Hartford.

Moreover, Bates argues that, even if there is some inconsistency in his statements or even if there had been a prior carpet fire - both of which he strenuously disputes - Hartford must show that he, through his statements, intended to deceive this insurance carrier. As noted above, *supra* note 3, the Court is uncertain as to which of the two concealment or fraud provisions applies to Bates's claim. The provision that was cited by Hartford requires that the allegation of fraud be intentional and material. Although the provision in the Michigan Special Provisions does not include the modifying words, "intentionally" or "material," in connection with the fraudulent conduct or

13

false statement provisions, it does include this language in the "*misrepresentation and concealment*" provision. It is noteworthy that neither of the parties have briefed the issue as to whether, in the absence of "intent" or "materiality" requirements in the policy, an insurer must still prove materiality and intent with respect to fraud or false statements. *Compare West v. Farm Bureau Ins. Co.*, 259 N.W.2d 556, 557 (Mich. 1997) (citations omitted) ("Where an insurance policy provides that an insured's concealment, misrepresentation, fraud, or false swearing voids the policy, the insured must have actually intended to defraud the insurer. The effect of this rule is that a false claim regarding a small portion of the loss may not result in forfeiture of the entire coverage unless the insured is shown to be clearly culpable."), *with Martin v. Farm Bureau Gen. Ins. Co.*, No. 275261, 2008 WL 1807940, at *6 (Mich. App. Apr. 22, 2008) ("Because the willful and material language is no longer present in the statute, and the policy language does not require the insured to have intentionally committed fraud or false swearing about material facts or circumstances, manifest injustice did not result by the absence of an instruction regarding intent and materiality."). Nor have they briefed the issue of whether the fraud or false statement provisions - as opposed to the misrepresentation provision - even apply to Bates's claim. In light of the earlier determination by the Court that a genuine issue of a material fact exists with respect to the threshold question of whether Bates committed any misrepresentation, it is not necessary at this time to resolve the secondary question of whether Hartford must prove - and, if so, has proven - intent and/or materiality. Thus, the Court leaves this issue open for later determination, should it become necessary to do so.

Any further effort by the Court to parse through this post-claim exchange of words between Hartford and Bates over his alleged misrepresentations (as reported above) is simply an exercise in futility without any final resolution of the issue in sight. Furthermore, it gives support to the

conclusion that - despite the contentions by the respective parties - there exists a genuine issue over a set of material facts. This, in turn, compels the Court to conclude that the questions of whether Bates committed misrepresentation, and if so, whether the concealment or fraud provision justified Hartford's denial of his claim, are not appropriate for resolution by a motion for a summary judgment. In fact, a reasonable jury could resolve this issue in either party's favor. *Cf. Aqua Grp.*, 620 F. Supp. 2d at 826-30 (denying motion for summary judgment where each side adduced sufficient evidence that the jury could find for either party with respect to whether insured committed misrepresentation). Moreover, determinations with respect to Bates's credibility are quintessentially within the province of the jury. Therefore, the Court denies both parties' motions for summary judgment with respect to Hartford's misrepresentation defense.

VI.

For the reasons that have been set forth above, the Court (1) denies Hartford's motion for summary judgment and (2) grants in part and denies in part Bates's counter-motion for summary judgment.

IT IS SO ORDERED.

Dated:  March 3, 2011           s/Julian Abele Cook, Jr.
      Detroit, Michigan          JULIAN ABELE COOK, JR.
                                         United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 3, 2011.

                                                                      s/ Kay Doaks
                                                                      Case Manager